**Donald TAYLOR, Plaintiff,**

**v.**

**CORINTH PUBLIC SCHOOL DISTRICT, Wayne O. Gann, in His Official Capacity as Superintendent of the Corinth Public School District, the Mississippi Department of Education, and Thomas Burnham, in His Official Capacity as the State Superintendent of Education, Defendants.**

**No. 1:96CV4–S–D.**

United States District Court,
N.D. Mississippi,
Eastern Division.

March 15, 1996.

John J. Bach, Jackson, MS, for Plaintiff.

Jimmy Price, Jr., Corinth, MS, Robert E. Sanders, Assistant Attorney General, Jackson, MS, for Defendants.

## OPINION

SENTER, Chief Judge.

Plaintiff Donald Taylor brought this action by and through his mother, Pamela Taylor, as an appeal from an administrative proceeding. The purpose of the administrative review, in large part, was to determine Donald's least restrictive educational environment pursuant to the Individuals with Disabilities Education Act [hereinafter IDEA]. 20 U.S.C. § 1401, et seq. The cause of action is now before this court on plaintiff's motion for a preliminary injunction. Plaintiff seeks an order enjoining defendants from shifting the location of his education from the district's alternative school to a classroom at the sheriff's office. Having thoroughly viewed the administrative record, the testimonial and documentary evidence presented at the preliminary injunction hearing, and the memoranda of authorities provided by counsel, the court makes the following findings of fact and conclusions of law.

## Findings of Fact

Donald Taylor is a fourteen-year-old eighth grader in Corinth, Mississippi. In 1992, when Donald was in the fourth grade, the Mississippi State Department of Education determined that he was "emotionally handicapped" and was therefore eligible for special education services. From that time until the beginning of the 1992–1993 school year, the Corinth school district placed Donald in special education classes. The determination of Donald's proper educational setting was made pursuant to the IDEA, and as such, district officials and Donald's mother formulated and agreed to an Individualized Educational Plan [IEP]. The plan included individual instruction, counseling, and eventually participation in regular classes for spelling and certain nonacademic courses. However, despite various successes, Donald consistently refused to follow instructions and was often confrontational with both his teachers and his peers.

As a result of this behavior, Donald's placement was changed to the district's alternative school in the fall of 1992, again, with Pamela Taylor's consent. The school district employed a consultant in educational psychology from the University of Mississippi to develop a behavioral management plan for Donald. However, this multi-step program involving positive reinforcement was apparently unsuccessful, as Donald remained defiant and aggressive.

Donald's next educational setting was an isolated class in the regular school with a special education teacher. Although Donald did have some good days, he was often hostile and refused to complete his assignments.

Donald remained in this placement until the end of the 1992–1993 school year.

In the fall of 1993, the district again attempted to provide Donald a proper learning environment at the alternative school. Donald's anti-social behavior increased, however, and school records indicate that Donald physically destroyed a door while in a rage, broke out classroom windows, and fought with authority figures. This "out-of-control" behavior caused the district and Mrs. Taylor to place Donald in residential care at Youth Villages on the Deer Valley campus for the remainder of the 1993–94 school year.

When Donald returned to school during the 1994–95 school year, he was placed in regular classes with help from the special education resource teacher. He exhibited appropriate behavior for approximately two weeks, but then became noncompliant and disrespectful. School officials and Mrs. Taylor agreed that residential placement had again become appropriate, and Donald returned to Deer Valley. Donald's explosive anger and lack of respect for authority remained evident at Deer Valley, although teachers there did believe they had made progress through novel behavior modification techniques, as well as through the use of physical restraint methods (similar to wrestling holds) when Donald became enraged.

Donald completed his second stay at Deer Valley in August of 1995. Although Donald had satisfied a variety of goals that had been established for him, the evidence indicates that the underlying rationale for his release was at least partially based on dwindling Medicaid funds. Upon his return to Corinth, defendants developed a new IEP, and the committee and Mrs. Taylor agreed that Donald should return to the alternative school. Although Donald was angry that he was not reinstated at the regular school, district officials explained that a reward system was inherent within the new plan. That is, he would be allowed to attend the regular school in increasing increments for every ten school days he performed satisfactorily in his alternative classes. Donald ultimately agreed to cooperate, and his behavior was appropriate for nine days. On the tenth day, Donald variously disrupted the other student's activities and refused to follow instructions. As a result, on September 6, 1995, Donald's IEP committee met with Mrs. Taylor to discuss his behavior and future placement. The District recommended that Donald's educational setting should be moved to a self-contained classroom located in a courtroom at the sheriff's office in Corinth. He would receive five hours of individualized instruction per week. Mrs. Taylor did not formally agree to this placement at the IEP meeting and, instead, stated that she wanted to discuss it with her legal representative. She subsequently refused placement at the detention center, and Donald has not returned to school.

Although Donald had not exhibited the level of violence that had been common in the past, the District nonetheless believed that it was in Donald's best interest, as well as in the best interests of the other students and his teachers, for Donald to receive one-on-one instruction at the detention center. Doctors had diagnosed Donald's handicap as Intermittent Explosive Disorder, a rare mental condition. Its essential feature, as noted in *The Diagnostic and Statistical Manual of Mental disorders—Fourth Edition*, is marked by a "failure to resist aggressive impulses that result in serious assaultive acts or destruction of property.... The degree of aggressiveness expressed during an episode is grossly out of proportion to any provocation or precipitatory psychosocial stressor. In addition to the behavior exhibited at school, Donald had attempted suicide several times, and had threatened to kill his sister and mother. Thus, district officials believed that Donald's relatively minor acts of disobedience at the alternative school could quickly escalate to violence.

In an attempt to appeal the district's decision and thereby readmit Donald in the alternative school, Mrs. Taylor requested a due process hearing pursuant to the IDEA. This hearing was held on October 19, 1995. On December 4, 1995, the hearing officer rendered his report, in which he found that the detention center placement would not satisfy Donald's long-term needs. However, given Donald's history, the officer recognized the need for individualized instruction. Thus, the officer held that the detention center was

an appropriate educational setting for a maximum of forty-five school days. During that time, Donald was to receive a minimum of ten hours of instruction per week, with transportation provided by the school district. A behavioral management system was to be designed so as to specifically address Donald's needs. Donald was to be assisted with anger control, social skills, peer interaction, and self-esteem. The hearing officer further ordered the district to develop and implement a therapy plan, with technical assistance provided by a psychiatrist or psychologist. Additionally, because the detention was to be utilized as an interim placement, a transition plan was to be developed to assist Donald's ultimate return to the alternative school, or to a residential placement, whichever setting was deemed most appropriate. Lastly, the officer ordered a psychiatric evaluation for Donald due to his recent suicide threats.

On December 8, 1995, an IEP committee met with Mrs. Taylor in order to implement the officer's report. At the insistence of Mrs. Taylor and her counsel, district representatives outlined the exact procedure that would be utilized in the event Donald became violent. The officials stated that a police officer would be available to intervene if Donald threatened the teacher. However, the two parties disagreed as to what constituted threatening behavior. As a result, no agreement could be reached, and to date, Donald has not attended school. It is in this posture that the action has now come before this court.

### Conclusions of Law

■ A preliminary injunction is considered extraordinary relief, and a determination as to whether a set of circumstances warrant such relief rests in the discretion of the district court. *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974). The Fifth Circuit has limited the court's discretion, however, in setting forth four prerequisites for the issuance of a

preliminary injunction. *Id.* These elements are: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest. *Id.*

■ In considering the first element, the federal regulations promulgated with the IDEA are clear that a school district need not gain parental consent to change a child's educational placement after an initial IEP has been implemented. *See* 34 C.F.R. § 300.504. Parental notification of a plan to change a student's placement is all that is required. *Id.* Thus, the court does not believe it is likely that the school district committed a procedural error in determining that Donald's education should take place at the detention center.

In addition, the plaintiff has charged that he was entitled to "stay put" at the alternative school throughout the pendency of the due process hearings pursuant to 20 U.S.C. § 1415(e)(3). The directive of this statute is clear, in that it is designed to maintain the status quo pending resolution of administrative and judicial proceedings under the IDEA. *Jackson v. Franklin County School Board*, 765 F.2d 535, 538 (5th Cir.1985); *see also Honig v. Doe*, 484 U.S 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). However, the Fifth Circuit has consistently carved out an exception to this mandate which the court now finds is relevant to the present inquiry. In *Honig* and *Jackson*, courts held that the stay-put provision does not infringe upon a local school board's authority to ensure a safe school environment. *Id. See S–1 v. Turlington*, 635 F.2d 342, 348 n. 9 (5th Cir.1981). Thus, the stay-put provision is inapplicable, given the court's equitable powers, when a school district has reasonably determined that a child is an endangerment to himself or others.[1] In light of the evidence presented,

---

1. The court recognizes that *Honig* partially abrogated prior case law relating to the IDEA's stay-put provision. *Honig*, 484 U.S. at 325, 108 S.Ct. at 605, 98 L.Ed.2d at 708. However, *Honig* left intact the proposition that district courts retain inherent equitable powers with regard to the placement of dangerous students. *Id.* at 326, 108 S.Ct. at 605–06, 98 L.Ed.2d at 708–09.

the court finds that the school district's determination that plaintiff was and perhaps remains a potentially dangerous child was reasonable.

Furthermore, the plaintiff contends that the detention center does not provide the least restrictive environment available to create an appropriate educational setting. However, the school district has utilized a variety of other placements with limited success. It is also important to note that the detention center is merely an interim educational environment. Defendants have amassed a considerable evidentiary record demonstrating to the court that, although the detention center's setting is certainly not a guaranteed remedy for Donald's disruptive and often violent behavior, it will provide him the individualized attention and counseling he requires. *See Livingston v. DeSoto County School District,* 782 F.Supp. 1173, 1180 (N.D.Miss1992) (holding that educational benefit conferred must be meaningful, though not necessarily optimal). Additionally, it is perhaps possible that the environment will create the incentive for Donald to perform in a manner consistent with those students who have the genuine desire to attend Corinth's regular school system. Again, Donald's placement at the detention center does not ensure that this will occur, but the court does not find that it is substantially likely that the district violated the law in attempting to provide such an incentive for a mere forty-five school days.

■ The second element of the *Canal Authority* calculus requires the court to consider whether there is a substantial risk of irreparable harm if the preliminary injunction is not granted. *Canal Authority,* 489 F.2d at 572. In regard to the instant motion for an injunction, it appears that this prong strikes to the foundation of Mrs. Taylor's concern for her child. Donald has testified that attending classes at the detention center would make him feel as if he were both a criminal and a caged beast. While the court has not turned a deaf ear to Donald's expres-

sion of obviously sincere emotions, the placement is merely temporary and has apparently been met with success in the district's attempt to educate at least one other student. It is clear that the district is not merely punishing Donald. Rather, the district's other available alternatives within the city of Corinth have not satisfied the IDEA's mandate of providing him a meaningful education. Defendants have articulated a desire to educate Donald within their own school system, and the court finds that they should be provided that opportunity.

■ The third element to consider is whether the threatened injury to plaintiff outweighs the threatened harm the injunction may do to plaintiff. As demonstrated in the findings of fact, on numerous occasions Donald has demonstrated his ability to threaten and harm others. Defendants have made clear their concern that a failure to remove Donald from the alternative school may result in injury to his peers, or at the very least, it will destroy the proper learning environment necessary to educate other students. Additionally, the district believes that the detention center's close proximity to available law enforcement officers should protect those teachers charged with educating Donald in an isolated room. In light of the violent behavior Donald has exhibited in the past, the court finds that the potential for harm to Donald does not outweigh the threatened harm to others.

■ Lastly, to grant a preliminary injunction in the case at bar, the court would have to determine that such relief would not disserve the public interest. Plaintiff alleges that the failure to grant injunctive relief would violate public policy because it would represent a validation of defendant's illegal actions. However, the court held above that the evidence provided does not demonstrate a substantial likelihood that defendants violated the provisions of the IDEA. Thus, to grant an injunction in this instance, the court

Even if this were not the case, injunctive relief is a drastic remedy, and as such, plaintiff must satisfy each *Canal Authority* prerequisite. *Cherokee Pump & Equip. Inc. v. Aurora Pump,* 38 F.3d 246, 249 (5th Cir.1994). Because the court is

not persuaded that plaintiff carried his burden on the final three elements, a preliminary injunction is not warranted, regardless of *Honig*'s effects on prior Fifth Circuit case law.

would have to ignore the clear mandates established by the IDEA and relevant Fifth Circuit case law. Similarly, a preliminary injunction would not only frustrate the remedial provisions of the IDEA with regard to potentially dangerous children, it would undermine the methodology utilized by educators in attempting both to educate these students and guarantee a safe school environment. Injunctive relief would require the court to substitute its inherent equitable powers for certain reasoned decisions made by experienced educators. While the court recognizes that cases exist in which judicial intervention is warranted, the court holds that the instant cause of action does not present such a circumstance.

Having carefully considered the evidence, the argument of counsel, and the applicable law, the court finds that plaintiff has not satisfied his burden of demonstrating that injunctive relief is warranted. The court sincerely empathizes with defendants, Mrs. Taylor, and most significantly with Donald, due to the circumstances that brought the parties to this juncture. It is hoped that the court's order today will not end further discussions between all interested parties so as to achieve a more amicable solution to the problems presented.

Plaintiff's motion for a preliminary injunction is denied, and the court adopts the remedies imposed by the hearing officer's report. An order in accordance with this opinion shall be issued.

### ORDER

Pursuant to an opinion filed contemporaneously herewith, it is ORDERED:

That Plaintiff Donald Taylor's motion for a preliminary injunction is denied.