## JOHN & KOSTAS SERVICE STATION, INC., Plaintiff, Appellant,

v.

## CUMBERLAND FARMS, INC., Defendant, Appellee.

### No. 91–1502.

United States Court of Appeals, First Circuit.

Heard Oct. 10, 1991.

Decided Nov. 6, 1991.

Michael P. Murphy with whom Robert E. Weiner, Boston, Mass., was on brief, for plaintiff, appellant.

Paul D. Sanson with whom Timothy Patrick Brady, Shipman & Goodwin, Hartford, Conn., and Mark G. Howard, Canton, Mass., were on brief, for defendant, appellee.

Before CAMPBELL, Circuit Judge, BROWN * and BOWNES, Senior Circuit Judges.

BOWNES, Senior Circuit Judge.

This is an appeal by plaintiff-appellant John & Kostas Service Station, Inc. ("Kostas") from a summary judgment in favor of defendant-appellee Cumberland Farms, Inc. ("Cumberland").

### I.

Kostas operated a retail motor fuel service station as a franchisee of Cumberland. Its franchise agreement expired on October 31, 1987. On September 3, 1987, Cumberland offered a new franchise agreement to Kostas for the period November 1, 1987 to November 1, 1990. Kostas refused to enter into the agreement. It claimed that the proposed agreement violated the Petroleum Marketing Practices Act ("PMPA" or "the Act"), 15 U.S.C. §§ 2801–2841. Kostas brought an action under section 2805 of the Act seeking a preliminary injunction and damages. Its complaint alleged, *inter alia:* "The defendant has not, in good faith, offered a franchise to the plaintiff on non-discriminatory terms and conditions, and has failed to renew the plaintiff's franchise in violation of the PMPA." The district court denied Kostas' motion for summary judgment and granted that of Cumberland. It held that as to plaintiff's mo-

---

* Of the Fifth Circuit, sitting by designation.

tion, there were factual issues in dispute. In granting defendant's motion for summary judgment the court stated:

> I am persuaded by the record that Cumberland Farms is correct when they say, first, as a purchasing franchisor, not the withdrawing franchisor, the Act does not apply to them; and, secondly, that on the record presented here, a procedure followed by Cumberland Farms, that they have shown that there is no issue of fact that their nonrenewal was not discriminatory.

This appeal followed. We affirm.

## II.

Our review of summary judgment is plenary. *Amsden v. Moran*, 904 F.2d 748, 752 (1st Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991); *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990). We, like the district court, must view the record in the light most favorable to the non-moving party indulging all reasonable inferences in that party's favor. *Griggs–Ryan*, 904 F.2d at 115; *Amsden*, 904 F.2d at 752. Under Federal Rule Civil Procedure 56(c) the moving party is entitled to summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

## III.

The undisputed facts are as follows. Kostas' last franchise agreement was with Gulf Oil Corporation. The termination date was October 31, 1987. Gulf and Chevron U.S.A. Inc. merged on July 1, 1985. The name of the merged corporation became Chevron U.S.A. Inc. In 1986 Chevron sold all of its assets in Massachusetts and eight other states to Cumberland. As part of the sale it assigned to Cumberland all of its franchises covering the operation of its motor fuel retail service stations. The Kostas franchise was included in the sale and assignment.

Although it believed that PMPA did not apply to the sale and assignment from Chevron to Cumberland, Chevron sent to all of its dealers, including the plaintiff, formal notices of nonrenewal pursuant to § 2804 of PMPA. On September 3, 1987, Cumberland, pursuant to the purchase and sale agreement with Chevron, offered Kostas a new franchise agreement for a period of three years from November 1, 1987 through October 31, 1990. The agreement included all of the documents necessary to implement it. The new franchise agreement and supplementing documents were essentially the same as offered to other service station operators whose franchises were due to expire. All were on the same uniform preprinted forms.

The monthly rent that Cumberland proposed to all renewal franchisees, including plaintiff, was calculated in accord with a uniform mathematical formula: "one twelfth (1/12) of the sum (a) an objective evaluation of the fair market value of the property multiplied by an eleven percent (11%) rate of return on the value of that property and (b) the taxes on that property." Affidavit of William Gorden. The franchisees do not have to pay the full rent under the formula until the third year of their franchises. In applying its rental formula Cumberland used independent appraisers to determine the fair market value of each service station premises.

Under Cumberland's rent review program a dealer has the right to obtain its own premises valuation and submit it to Cumberland if the dealer believes Cumberland's valuation is too high. If this is done Cumberland can either accept the dealer's valuation or get another appraisal. If Cumberland rejects the dealer's appraisal and the difference between the dealer's appraisal and Cumberland's second appraisal is more than 10% of the higher of the appraisals, an additional real estate appraiser will be mutually appointed by the dealer and Cumberland. The value assigned to the premises will be the average of the three appraisals.

In accord with its policy, Cumberland made an appraisal of the premises occupied by Kostas and submitted it to Kostas along with a franchise renewal agreement. Kostas disagreed with Cumberland's valuation

of the premises and had its own appraisal made. Kostas' appraisal put the market value of the premises at $610,000; this was $190,000 lower than Cumberland's appraisal value. Kostas was satisfied that its appraisal was a fair estimate of the market value of the premises. Cumberland accepted Kostas' appraisal and offered Kostas a revised rent schedule based on that valuation. Kostas refused to execute the revised franchise agreement.

## IV.

Because of the broad and conclusory allegations in the complaint encompassing PMPA generally without reference to specific sections, we think it necessary to state explicitly what provisions of PMPA are implicated. First, we note that Kostas seems to rely, in part at least, on the jury verdict and judgment in *Chestnut Hill Gulf v. Cumberland Farms*. In reversing that judgment, *Chestnut Hill Gulf v. Cumberland Farms*, 940 F.2d 744 (1st Cir.1991), we discussed in detail Chevron's sale of its assets and assignment of its franchises to Cumberland. We concluded that "assignments of franchises do not trigger the provisions of the act so long as the assignments do not violate state law and do not violate the contract rights of franchisees." *Id.* at 750. We found that there was no violation of the contract rights of the franchisees or any violation of Massachusetts law. *Id.* at 752.

There can be no question that Cumberland is a franchisor under section 2801(3) [1] of PMPA and, as such, subject to its applicable provisions. There are two sections of the statute that are implicated.[2] The first is section 2802(b)(2)(E)(iii)(II) which made the assignment of franchises from Chevron to Cumberland contingent upon Cumberland offering,

in good faith, a franchise to the franchisee on terms and conditions which are not discriminatory to the franchisee as compared to franchises then currently being offered by such other person or franchises then in effect and with respect to which such other person is the franchisor.

15 U.S.C. § 2802(b)(2)(E)(iii)(II).

The other applicable provision is section 2802(b)(3)(A), which provides that grounds for nonrenewal of a franchise relationship are:

(A) The failure of the franchisor and the franchisee to agree to changes or additions to the provisions of the franchise, if—

(i) such changes or additions are the result of determinations made by the franchisor in good faith and in the normal course of business; and

(ii) such failure is not the result of the franchisor's insistence upon such changes or additions for the purpose of preventing the renewal of the franchise relationship.

Under the applicable requirements of PMPA, Cumberland had to prove three things: that it had offered in good faith a non-discriminatory franchise to Kostas (Section 2802(b)(2)(E)(iii)(II)); that the changes or additions in the new franchise agreement offered Kostas were made by Cumberland "in good faith and in the normal course of business" (Section 2802(b)(3)(A)(i)); and the failure of Kostas to agree to the renewal franchise was not the result of Cumberland's "insistence upon such changes or additions for the purpose of preventing the renewal of the franchise relationship" (Section 2802(b)(3)(A)(ii)).

The first question is whether there are any genuine issues as to any material fact.

---

**1.** "The term 'franchisor' means a refiner or distributor (as the case may be) who authorizes or permits, under a franchise, a retailer or distributor to use a trademark in connection with the sale, consignment, or distribution of motor fuel."

**2.** There are two other provisions imposing obligations on a franchisor. Section 2802(b)(1) ob-

ligates the franchisor to meet the notification requirements of section 2804. Plaintiff has not claimed any improper or defective notice, so this is not an issue.

The other provisions which may affect a franchisor are contained in section 2802(b)(2)(E)(iii)(II). These are not applicable.

Kostas argues that an issue of material fact was "Cumberland's intent to convert existing stations—including Kostas'—to use as a convenience store or a combination unit or to sell the property." Appellant's Brief at 18. This could not be a material issue of fact, however, because under PMPA Cumberland had the right to do this. Under section 2802(b)(3)(D), a franchisor has the right not to renew a franchise after a determination made in good faith and in the normal course of business; if—

  (i) such determination is—

    (I) to convert the leased marketing premises to a use other than the sale or distribution of motor fuel,

    (II) to materially alter, add to, or replace such premises,

    (III) to sell such premises, or

    (IV) that renewal of the franchise relationship is likely to be uneconomical to the franchisor despite any reasonable changes or reasonable additions to the provisions of the franchise which may be acceptable to the franchisee;

  (ii) with respect to a determination referred to in subclause (II) or (IV), such determination is not made for the purpose of converting the leased marketing premises to operation by employees or agents of the franchisor for such franchisor's own account; and

  (iii) in the case of leased marketing premises such franchisor, during the 90–day period after notification was given pursuant to section 2804 of this title, either—

    (I) made a bona fide offer to sell, transfer, or assign to the franchisee such franchisor's interests in such premises; or

    (II) if applicable, offered the franchisee a right of first refusal of at least 45–days duration of an offer, made by another, to purchase such franchisor's interest in such premises.

Kostas has not alleged or submitted any facts that would make either (ii) or (iii) applicable.

Kostas also attacks the appraisal process and argues that it "discriminated against those dealers including Kostas, with whom Cumberland did not wish to continue the franchise relations." Appellants Brief at 19. These conclusions cannot substitute for statements of issues of material fact.

While we can understand Kostas' reluctance to pay the increased rent Cumberland has set and make the changes the renewal agreement requires, it has stated no facts or cited to any law that show a violation of PMPA by Cumberland.

We have read the record in the light most favorable to Kostas, indulging all reasonable inferences in its favor. The undisputed facts show that Cumberland offered to Kostas in apparent good faith a franchise which was not discriminatory, as compared to those offered to the other franchisees. Except for the differences in the appraisal value of the service station premises, the renewal franchises were the same for all franchises. Cumberland used the same rental formula for all the franchises and its rental review policy was applied across the board.

Cumberland's own submissions on summary judgment tend to establish that the changes and additions in the renewal franchise offered to Kostas were the result of determinations made by Cumberland in good faith and in the normal course of business. Its rental evaluation and rental review policy, which are not disputed, tend to prove this. That Cumberland acted in good faith is also shown by the undisputed fact that it agreed to accept plaintiff's appraisal in place of its own for determining the rental amount.

Kostas has not submitted any facts negating the above or tending to show that Cumberland was using the changes and additions to the franchise agreement "for the purpose of preventing the renewal of the franchise argument." It is Kostas, not Cumberland, that has refused to renew the franchise.

For these reasons we hold that Cumberland was entitled to judgment as a matter of law.

We also affirm the district court's denial of plaintiff's motion for summary judg-

ment.  Indeed, we are hard put to understand why this issue was appealed.  Plaintiff's motion for summary judgment was based on the claimed collateral estoppel effect of the jury verdict and district court judgment in *Chestnut Hill Gulf v. Cumberland Farms*.  The judgment in that case was reversed by us.  940 F.2d 744.

Finally, we affirm the dismissal of the claim under Mass.Gen. Laws Ann. ch. 93A. We see nothing about Cumberland's offer of a renewal franchise to plaintiff that, on any reasonable interpretation of this record, could be found to be unfair or deceptive.

*Affirmed.*