**Nilsa MALDONADO, et al., Plaintiffs,**

**v.**

**Celeste BENITEZ, et al., Defendants.**

**Civ. No. 92–1057 (HL).**

United States District Court,
D. Puerto Rico.

Jan. 26, 1995.

Carlos A. Garcia–Perez, Goldman, Antonetti & Cordova, Ricardo L. Rodriguez–Padilla, Ricardo Rodriguez Law Firm, San Juan, PR, Miguel A. Maza–Perez, Novas, Maza & Lamoso, Hato Rey, PR, for plaintiffs.

Juan A. Moldes–Rodriguez, Hato Rey, PR, for Celeste Benitez, Lucila Torres, Aracelis De–Bien, Mildred Barreto, Lea Miranda, Noris Molina, Maria Alvarez, Alma Santiago.

Pedro J. Perez–Nieves, Saldana, Rey & Alvarado, Santurce, PR, for Rosangeles Berrios, Awilda Aponte–Roque, Lema Moya, Nancy Robles, Mrs. Lugo, Eduardo Maldonado, Carmen Alicea, Miriam I. Vazquez.

Pedro J. Perez–Nieves, Saldana, Rey & Alvardo, Santurce, PR, Juan A. Moldes–Rodriguez, Hato Rey, PR, for Jose A. Berrios–Morales, Noemi Ruiz, Abigail Rosario, Jose Antonio Ramos–Franco, Janet Gonzalez, Luz Evelyn Castro, Migdalia De–Ayala, Carmen Santiago–De Rosa, Ramon Cruz, Carlos Chardon, Maria Socorro Lacot, Julio Edgardo Fernandez–Torres, Mayra Carmoega, Osvaldo Feliu.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is defendants' motion for summary judgment. For the reasons stated below, the Court hereby **grants** defendants' motion.

## I. BACKGROUND

Plaintiffs are Nilsa Maldonado (Nilsa), her mentally retarded son, Ramon O. Soto Maldonado (Ramon), and her daughter, Flor de Oro Soto Maldonado (Flor de Oro). The thirty five defendants are various administrators and teachers working for the Puerto Rico Department of Education.[1] Plaintiffs'

---

1. Specifically, said defendants are Jose A. Rodriguez Morales, the superintendent of Rio Piedras III District for the Department of Education, Noemi Ruiz, superintendent of the Rio Piedras IV District for the Department of Education, Arelis De Bien, Special Education Supervisor of District III for the Department of Education, Jose Antonio Ramos Franco, the Superintendent of Rio Piedras VI for the Department, Janet Gonzalez, Special Education Supervisor for Rio Piedras District VI for the Department, Luz Evelyn Castro, Regional Director of the San Juan Region for the Department, Migdalia de Ayayla, the San Juan Regional Supervisor of the Special Education Program for the Department, Carmen Santiago de Rosa, the San Juan Regional Supervisor of the Special Education Program for the Department, the previous Secretaries for the Department of Education (Ramon Cruz, Carlos Chardon, Maria Soccorro Lacot, Awilda Aponte Roque, Lema Moya, and Lucila Torres), Nancy Robles, Ramon's evaluating teacher and employee at the Rio Piedras IV District for the Department, Julio Edgardo Fernandez Torres, the Coordinator of the Special Education Program at Rio Piedras III for the Department, Mayra Carmoega, Director of La Esperanza School, "Jane" Lugo, teacher at La Esperanza, Eduardo Maldonado, teacher at La Esperanza, Carmen L. Ali-

complaint addresses the educational placement of Ramon by the Department since 1979. In the 1979–1980 academic year, plaintiffs contend that Ramon was wrongfully placed by the Rio Piedras VI District for the Department with a home-bound teacher. Nilsa claims that she was never consulted with or oriented to the Individualized Education Program (IEP) designed by the school and that the IEP did not place Ramon in the least restrictive environment, all in contravention to federal laws. On January 22, 1980, Nilsa visited the Rio Piedras IV office and discussed this situation with Nancy Robles. Robles suggested the placement of Ramon in the Mainstreaming Program at Villa Capri. Nilsa then met with Mrs. Flores, the head of the Mainstreaming Program, who stated that the Mainstreaming Program was not suitable for Ramon. Upon returning to Nancy Robles, Robles stated that there were no public facilities in which to place beneficially Ramon.

Although the reasons are unclear from the complaint, Nilsa did not enroll Ramon for the 1980–1981 academic year. In November of 1981, Nilsa claims that she contacted the Social Services Department in order to educate Ramon. In January 1982, Ramon was placed at the Center. A teacher and the Director of the Roosevelt Center informed Nilsa that Ramon was not being challenged by his placement at the Center. Therefore, Nilsa claims that she tried to arrange a placement for Ramon at Rio Piedras III District of the Department because Mrs. Robles of Rio Piedras IV refused to place Ramon. The complaint is unclear as to Ramon's situation for the 1982–1983 academic year.

On September 12, 1983, Ramon, who was at this time eleven years old, registered under the Special Education Program of the Department of Education and underwent educational, social and psychometric evaluations. However, plaintiffs allege that Ms. Carmoega of La Esperanza school in District III refused to enroll Ramon because he lived in District IV. Therefore, plaintiffs claim, Ramon had to spend the 1983–1984 school year at the Roosevelt Center again. Defendants, however, attach an IEP for the 1983–1984 academic year for educational services in the home that was prepared and accepted by Nilsa. This IEP stated that the parent could obtain a hearing if she disagreed with the IEP.

For the 1984–1985 academic year, Ramon enrolled in La Esperanza, "Inicio C," which is a program stressing behavior modification. Plaintiffs claim that this placement was contraindicated. Defendants again attach an IEP placing Ramon in special education classes for the 1984–1985 year. This IEP also contained a notice of the availability of a hearing, and said IEP was prepared and accepted by Nilsa.

During the 1985–1986 school year, Ramon attended behavior modification class taught by Eduardo Maldonado. Nilsa admits to signing the IEP placing Ramon in the behavior modification classes for the next two years. Nilsa, however, claims that Ramon's behavior was becoming violent, and she therefore requested a psychological evaluation of Ramon's condition. Carmoega denied this request. At this point, Nilsa alleges she attended the grievance division of the Department of Education. Plaintiffs claim nothing was done, nor was she informed of her right to a hearing. Because Ramon's behavior continued to become more aggressive, plaintiffs claim that Nilsa took Ramon out of school.

For the 1986–1987 academic year and half of the 1987–1988 year, Ramon attended the

cea, employee for the Counseling Vocational Rehabilitation Program at the Medical Center of Rio Piedras, Miriam I. Vazquez. Coordinator of the Independent Life Program for the Department, Osvaldo Feliu, the Coordinator of Special Education for the Department, Oscar Cruz, employee of the Department, Lea Miranda, a social worker for the Rio Piedras III District for the Department, Noris Molina, teacher at the Amalia Marin School, Mildred Barreto, teacher for the Amalia Marin School, Gladys "Doe," assistant to

Noris Molina and Mildred Barreto at the Amalia Marin School, Maria Alvarez, consulting teacher for the Rio Piedras III District for the Department, Alma Santiago, Interim Supervisor of the Special Education Program for the Department, Maria S. Burgos, homebound teacher assigned to Ramon by the Rio Piedras III District for the Department, Mrs. Flores, teacher of the Mainstreaming Program for the Department at Villa Capri, and Eduardo Maldonado, teacher at La Esperanza School.

Domenench School, an integrated private school. His behavior and performance were allegedly good during this time. In January 1988, for unexplained reasons, Ramon was not in school.

Nilsa met with Arelis de Bien of Rio Piedras III District on July 29, 1988 in order to place Ramon back in the public school system. Arelis de Bien suggested that Ramon be placed in the Carmen Gomez Tejera School, but Nilsa allegedly objected to the placement as Ramon's retardation was too severe for said school. Also during the summer of 1988, the "Consejeria de Rehabilitacion Vocacional de Centro Medica" refused to enroll Ramon in its program due to the fact of inadequate services. Nilsa next visited the Modesto Gotay Center, which had been recommended to Nilsa by various people. Nilsa, however, claims that the center was too horrible for her to place her son there.

Nilsa spoke with Osvaldo Feliu, the Coordinator of Special Education for the Department of Education of Puerto Rico, and Oscar Cruz, who also worked for the Department. Feliu and Cruz allegedly informed Nilsa that they had alerted the Central Offices of the Department of Education of Puerto Rico of her problems. And although Arelis de Bien requested that Ramon be placed in a school under the Department, when Nilsa suggested placement at "Psicopedagogico," de Bien stated that it was too expensive.

Nilsa visited "Apacedo," but was told Ramon was too old for the children school. Nilsa next suggested that she place Ramon at Nilmar, but de Bien again rejected this proposal. Therefore, for the 1988–1989 academic year, an IEP was prepared and Ramon was placed in the Amalia Marin School's independent living program. Nilsa approved said IEP, which also gave notice of an available hearing if the parent was unsatisfied with the plan. Noris Molina, a teacher at said school, stated that children were not receiving adequate instruction due to the lack of educational resources.

Defendants submit an IEP placing Ramon in the Amalia Marin School that was prepared and assented to by Nilsa for the 1989–1990 academic year. Plaintiffs state that during this year Ramon became afraid of attending school and of strangers and started to utter sexually-related words. Nilsa claims that again she unsuccessfully attempted to retain psychological evaluations of Ramon by the Department of Education, and had to retain private practitioners for the evaluation instead.

Defendants have also submitted the IEP, prepared on May 24, 1990, placing Ramon in the Amalia Marin program for the 1990–1991 academic year that was prepared and accepted by Nilsa. Plaintiffs claim that on August 2, 1990, Nilsa wrote to Arelis De Bien, the Supervisor of the Special Education Program, requesting the services of a teacher for her son. On November 20, 1990, Nilsa wrote Lea Miranda, the social worker for Special Education at the Puerto Rico Department of Education, requesting the services of a teacher for her son, Ramon. On November 28, 1990, she wrote the Department of Education in Washington, D.C., documenting her struggles to secure appropriate education for Ramon. Nilsa was later informed that her grievance to the Department of Education in Washington, D.C. had been referred to the Puerto Rico Department of Education.

On January 30, 1991, Nilsa arranged a meeting at Rio Piedras III for the Department. At this time, Ramon's request for a home-bound teacher and/or an IEP was rejected. On May 29, 1991, during a meeting to create an IEP, it was decided that Ramon would receive a physical education teacher twice a week. The Department, according to plaintiffs, has not complied with this agreement.

Finally, an IEP was prepared and accepted by Nilsa for the 1991–1992 academic year. This plan placed Ramon in the San Augustin school. Defendants claim that Ramon is currently receiving special education and services through a home-bound teacher.

Defendants state that a class action suit was filed in Superior Court against the Special Education Program of the Puerto Rico Department of Education. The court issued a preliminary injunction against the Program and appointed a Special Master to monitor the Department's compliance. One of the outcomes from the case is that on May 31,

1991, the Puerto Rico Department of Education substituted their previous due process hearing procedure with a new procedure to review the Department's decisions regarding special education and related services.

On the basis of the above facts, plaintiffs have brought suit claiming that defendants have violated the Individuals with Disabilities Education Act (IDEA), the Due Process Clause of the U.S. Constitution, the Rehabilitation Act, and Articles 1802 and 1803 of the Puerto Rico Civil Code. Plaintiffs request money damages and injunctive relief, such as credit for all the time Ramon has been excluded from participation in a public school education.

## II. STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The opposing party must then designate specific facts that show that there is a genuine triable issue. *Id.* at 324, 106 S.Ct. at 2553; Fed.R.Civ.P. 56(e). The nonmoving party cannot rest upon mere conclusory allegations, improbable inferences and unsupported speculation. *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993), *reh'g denied*, March 12, 1993. Likewise, the nonmoving party cannot rest on the pleadings but should set forward specific facts showing that there are genuine triable issues. *Id.* Supporting and opposing affidavits shall be based upon personal knowledge and set forth facts that would be admissible into evidence at trial. Fed.R.Civ.P. 56(e). All material facts set forth in the movant's statement of uncontested facts will be deemed to be admitted unless controverted by the nonmovant in a separate, short, concise statement of material facts at issue. Local Rule 311.12. *See also, Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 930 (1st Cir.1983).

A fact is material, if under applicable substantive law, it may affect the result of the case. *Ortega–Rosario v. Alvarado–Ortiz*, 917 F.2d 71, 73 (1st Cir.1990). A dispute is genuine only if there is conflicting evidence that requires a trial to resolve the discrepancy. *Id.* In determining whether summary judgment is warranted, the court views the facts alleged in the light most favorable to the non-moving party and must indulge all inferences in favor of that party. *Rossy v. Roche Products, Inc.*, 880 F.2d 621, 624 (1st Cir.1989); *John & Kostas Service Station, Inc. v. Cumberland Farms, Inc.*, 948 F.2d 821, 822 (1st Cir.1991).

## III. DISCUSSION

Defendants argue that plaintiffs' case should be dismissed for four different reasons. First, defendants argue that plaintiffs have not properly exhausted their administrative remedies as required by the statute. Second, defendants argue that the federal statutes concerning the education of individuals with disabilities are the exclusive remedies, and therefore plaintiffs may not also bring claims under section 1983, the Rehabilitation Act, and Articles 1802 and 1803 of the Puerto Rico Civil Code. Defendants also argue that plaintiffs' complaint should be dismissed under the Eleventh Amendment as to defendants in their official capacity. Finally, defendants argue that the Court should abstain from this case due to the fact that there is a related proceeding in state court.

### A. Applicable Statutes

In 1970, Congress passed the Education of the Handicapped Act (EHA) for the purpose of ensuring

> free appropriate public education which emphasizes special education and related services designed to meet their unique needs, to assure that the rights of handicapped children and their parents ... are protected, to assist States and localities to provide for the education of all handicapped children, and to assess and assure the effectiveness of efforts to educate handicapped children.

20 U.S.C. § 1400(c) (1990). Under the Act, a local educational agency or an intermediate educational unit shall "establish or revise ...

an individualized education program [IEP] for each handicapped child at the beginning of each school year and will then review and, if appropriate, revise, its provisions periodically, but no less than annually." 20 U.S.C. § 1414(a)(5) (1990).

An IEP is a written statement concerning the educational and other service needs to be met and the way in which they shall be met. 20 U.S.C. § 1401(a)(19) (1990). The IEP is developed in a meeting of the parent, the child, if appropriate, the teacher, and a representative of the education agency, who is "qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of handicapped children." *Id.*

Under the EHA, handicapped children and their parents are provided notice and an opportunity to present complaints concerning the state's provision of the child's free appropriate education. 20 U.S.C. § 1415(b)(1)(D) and (E) (1990). Upon receipt of a complaint, parents shall have an opportunity for a hearing. 20 U.S.C. § 1415(b)(2) (1990).

Moreover, EHA states that

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 ... or any other Federal statutes protecting the rights of handicapped children and youth, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(f) (1990).

In 1990, Congress amended the EHA, and retitled the Act as the Individuals with Disabilities Education Act [IDEA]. 20 U.S.C. § 1400(a) (Supp.1994). Under the IDEA, "A State shall not be immune under the eleventh amendment to the Constitution of the United States from suit in Federal court for a violation of this chapter." 20 U.S.C. § 1403(a) (Supp.1994). Accordingly, the IDEA provides that under IDEA, "remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public entity other than a State." 20 U.S.C. § 1403(b) (Supp.1994). IDEA's provisions abrogating state sovereign immunity take effect "with respect to violations that occur in whole or in part after October 30, 1990." 20 U.S.C. § 1403(c) (Supp.1994).

### B. Exhaustion

■ Defendants claim that plaintiffs' complaint should be dismissed for failure to exhaust administrative procedures. Under the EHA and the IDEA, plaintiffs are required to file a complaint with the educational service provider, attend a due process hearing held by the agency, and appeal said decision if necessary to the state educational agency before filing a civil action in federal court. 20 U.S.C. § 1415(a)–(e) (1990).

Where the parents of a child with disabilities contacted the agency regularly through meetings, visits, and letters to request the provision of required assistance to their daughter, but because the parents did not exhaust all the administrative remedies, such as a due process hearing, the First Circuit affirmed the District Court's dismissal without prejudice of plaintiffs' complaint for failure to exhaust administrative remedies. *Ezratty v. Commonwealth of Puerto Rico,* 648 F.2d 770 (1st Cir.1981). In *Ezratty,* the parents communicated regularly with the agency complaining that the agency was unlawfully denying their child aid to which she was entitled under the Education for All Handicapped Children Act of 1975. *Id.* at 773. The parents participated in an informal meeting, requested and secured an evaluation of their daughter, communicated regularly requesting an decision based on the evaluation, were informed they could request a due process hearing, but instead the parents filed a complaint in District Court. *Id.* Once the legal action was filed, the parents tried to secure a due process hearing with the agency, which flatly refused said request. *Id.* The District Court dismissed the complaint without prejudice for failure to exhaust administrative remedies, and the parents appealed.

The First Circuit explained that the exhaustion principle promoted accuracy, efficiency, agency autonomy and judicial economy. *Id.* at 774. Exhaustion promotes accuracy through the opportunity for the agency to apply its expertise to the case and to correct its own mistakes. *Id.* It promotes the sensible division of tasks by having the agency responsible for the development of the factual record and the court responsible for pure matters of law. *Id.* Finally, exhaustion effectuates the opportunity for the agency to exercise its discretion and the actualization of congressional intent as directed through the statute. *Id.*

In *Ezratty,* the First Circuit noted that the main issue was whether or not the Puerto Department of Education had provided the necessary educational programs as required under the statute. *Id.* at 775. The Court further stated that despite the agency's obstruction of plaintiffs' obtainment of a due process hearing, that the agency now was offering an administrative review. *Id.* As this was a matter requiring the evaluation and revision of the child's IEP, the Court found that this situation called for agency expertise and therefore administrative exhaustion. *Id.* The Court reasoned that plaintiffs should be required to exhaust due to the fact that administrative remedies were now available and the extreme of a judicial court trial, versus a simple intervention to expedite agency's determination, was unnecessary.[2] *Id.* at 777–78.

■ In the situation at hand, Nilsa has sought to secure an appropriate education for her son, Ramon. As shown in letters attached to her summary judgment, in 1990, Nilsa visited and communicated by letter with Arelis De Bien, the Special Education Program Supervisor, concerning the deteriorating condition of her son and his need for a teacher. Nilsa also wrote to Lea Miranda, the social worker for the Puerto Rico Special Education Program, requesting the Department to provide appropriate services for her son. Nilsa also communicated with the Department of Education in Washington, D.C., documenting her struggles to secure appropriate education for Ramon. Defendants do not contest these attempts by Nilsa.

Since these attempts, plaintiffs allege that Nilsa has held meetings with and received unkept promises from the Department. On January 16, 1992, plaintiffs filed this lawsuit in order to (1) gain credit for all the time Ramon has been excluded from participation in the educational system, (2) receive reimbursement for plaintiffs incurred expenses in their attempts to secure appropriate educational services for Ramon, (3) recover damages, (4) require the compliance of all educational facilities of the Department with the Rehabilitation Act, and (5) recover punitive damages.

Plaintiffs' complaint primarily focuses on the obtainment of appropriate educational services for Ramon. The matter of the appropriate IEP for Ramon is clearly within the Department's expertise. And although Nilsa Maldonado has attempted to complain about the educational services provided to her son Ramon, she has failed to bring her complaint through the proper administrative channels. Despite the IEPs' notice of the availability of a hearing, Nilsa Maldonado has never requested a hearing from the Department.

It is true that the Department has failed to assist Nilsa's efforts by organizing an efficient process through which her letters, visits and meetings to the various employees of the Department would achieve the attention and process necessary under the EHA. Nevertheless, it is also true, as in *Ezratty,* that Nilsa has not properly exhausted the available remedy of a hearing and thereafter an appeal. Therefore, as exhaustion is an integral part of the statutory scheme and as this Court finds that plaintiffs have not properly

---

2. The Court also required exhaustion due to another facet of the case not applicable to the case at hand. In *Ezratty,* the child was seeking monetary reimbursement for education received in Vermont. As plaintiffs had sued only the agency and the Secretary of Education in his official capacity, there was a question as to whether or not the Eleventh Amendment barred any legal claim. Therefore, the fact that the Eleventh Amendment would not be an issue in an administrative hearing presented another reason for plaintiffs to exhaust their remedies. *Id.* at 775–77.

exhausted their administrative remedies, plaintiffs are required to exhaust said remedies prior to judicial review unless they can prove exemption.

## C. Exemption From Exhaustion

■ Courts underscore that the exhaustion requirement should not be a rigid one. *Ezratty*, 648 F.2d at 774. Exhaustion shall not be required where pursuit of administrative relief would be futile and would thereby delay the proceedings further. *Id.* If plaintiff's claim involves a pure matter of law, and thus does not require agency expertise, courts shall not inflexibly require exhaustion. *Id.* Nor shall exhaustion be required in those circumstances where it would waste resources or cause severe harm upon litigant. *Id.*

### 1. Futility

Exhaustion is not required in those instances where it would be futile to pursue administrative proceedings. *Id.* The burden of proving futility is on plaintiff. *Honig v. Doe*, 484 U.S. 305, 327, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988).

In the case at hand, plaintiffs argue that their failure to exhaust administrative remedies should not be a bar to their recovery in this Court as said exhaustion would have been futile. Plaintiffs support their argument by pointing to the Department's absence of response to Nilsa Maldonado's repeated visits and communications with the Department's employees. Plaintiffs state that Nilsa was never advised of the procedural requirements available for complaints. Also, plaintiffs have submitted a report by the Office of Special Education Program of the United States Department of Education (OSEP) that states that the Puerto Rico Department of Education has failed to obey the EHA and IDEA's mandate that the agency develop compliance procedures.

■ Despite plaintiffs' conclusory allegations, the Court finds plaintiffs' exhaustion not to be futile. In the IEP excerpts for the years 1983–1989 that were submitted by defendants, the Department provided notice of a due process hearing for complaints. These IEPs were signed by Nilsa Maldonado below the notice "When not in agreement with the placement I am aware of my right to an informal hearing to resolve the disagreement." (Defendants' translation) The 1989–1992 IEPs presumably also contained notice, but said notice was not submitted by defendants with the other excerpts. Moreover, it is uncontested that in 1991, the Department amended their administrative procedures in order to comply with EHA's and IDEA's mandates to provide adequate complaint procedures. As there is evidence that notice of a hearing was provided and there is no evidence that the Department's revised complaint procedures do not comply with the EHA and the IDEA, plaintiffs have not shown that if they were to request a hearing, the Department would fail to provide plaintiffs with the opportunity to exhaust their administrative remedies.

Another reason for futility is found in cases where the agency has acted in a fraudulent and malicious manner. *Quackenbush v. Johnson City School District*, 716 F.2d 141 (2d Cir.1983), *cert. denied*, 465 U.S. 1071, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984). However, in the case at hand, plaintiffs have not shown any fraud or malice in the Puerto Rico Department of Education that prevented plaintiffs from exhausting their administrative remedies.

Also, courts have found exhaustion futile when the agency refused to consider and resolve complaints of system-wide EHA violations. *Mrs. W. v. Tirozzi*, 832 F.2d 748, 759 (2d Cir.1987). Plaintiffs claim that exhaustion is futile here because, as seen in OSEP's report, the Puerto Rico Department of Education has systematically violated the EHA and IDEA requirements. However, plaintiffs' complaint addresses Ramon's educational services. Said complaint does not state a claim of system-wide violations of the EHA and the IDEA. Moreover, plaintiffs do not prove that subsequent to OSEP's report the Department continued to violate the EHA and the IDEA. Accordingly, the Court finds that plaintiffs may not base a futility argument on defendants' alleged present systematic violations of the EHA and IDEA.

In the case where a plaintiff has never requested a due process hearing under the

EHA, and where there is no evidence to suggest that asking for said hearing would be futile, courts have held that the exhaustion exception of futility to not be warranted. *Christopher W. v. Portsmouth School Comm.*, 877 F.2d 1089, 1096 (1st Cir.1989). Plaintiffs make conclusory allegations that the Department's Manual violates the IDEA, basing said allegation on the OSEP report, but not addressing whether the changes made in May 1991, as reported by plaintiffs, corrected said deficiencies. Plaintiffs also allege that codefendants continue to violate the IDEA. However, plaintiffs offer no evidence to support said allegation. Here, although given notice that she could receive a due process hearing if she was not satisfied with the Ramon's IEP, Nilsa never requested a hearing. Nilsa signed Ramon's IEP for all years between 1983 and 1992, except for 1986–1987 and 1987–1988. And although she did write three letters to complain about Ramon's services, these letters never requested a hearing. Accordingly, the Court finds that plaintiffs have not proven futility in exhausting their administrative remedies.

### 2. Matter of Pure Law

■ If plaintiff's claim is a matter of pure law, then plaintiffs may be exempted from the exhaustion requirement. *Ezratty*, 648 F.2d at 774. In this case, plaintiffs are claiming that Ramon's IEPs have not provided for the least restrictive environment. The question of Ramon's educational plan is one involving the finding of facts, agency expertise, judgment, and discretion. This claim is not one involving a pure matter of law. Therefore, plaintiffs may not be excused from fulfilling the exhaustion of agency relief prior to judicial review.

### 3. Waste Resources Or Work Severe Harm On Litigant

As stated earlier, in *Ezratty*, the Department of Education originally prevented plaintiffs from receiving their requested due process hearing. Plaintiffs then filed suit in federal court and a trial was held. On appeal, the Department indicated in its brief that it would be willing to make administrative remedies available to plaintiffs. Basing its decision on reasons of agency expertise, accuracy and judicial economy, the First Circuit found that the agency's offer of an administrative remedy, even though offered at a late stage, justified a finding that exhaustion was not futile. *Ezratty*, 648 F.2d at 778.

■ In the case at hand, while the Puerto Rico Department of Education definitely appears to have failed to act upon plaintiffs' complaints, plaintiffs' failure to request a hearing as notified on the IEPs appears to have contributed to the failure to resolve plaintiffs' claims at the agency level. Plaintiffs never requested a hearing, nor did they request that the Court intervene for the sole purpose of requiring the agency to conduct an impartial hearing. Rather, plaintiffs have filed their complaint asking for a full trial on the merits. Unlike the Court in *Ezratty*, this Court has not proceeded beyond the dispositive motion stage. There has been no trying of facts by this Court. Therefore, the dismissal of this case in order that it proceed at the agency level will not harm plaintiffs in that there will be no duplication of fact finding; rather, said dismissal will result in the agency developing the factual record, applying its expertise, and exercising its discretion, as intended by the statutes.

Moreover, the exhaustion requirement shall not harm plaintiffs as the federal regulations provide for a timely resolution of plaintiffs' claims. Said regulations require an agency to schedule a hearing no later than forty-five days after the receipt of a request for a hearing. 45 C.F.R. § 121a.512(a). When the final decision is reached, the agency is required to mail it to the parties. *Id.* And no later than thirty days after the request for a review of said decision, the agency is required to reach a final decision and mail said decision to the parties. 45 C.F.R. § 121a.512(b).

### 4. Conclusion

The Court finds that the agency's expertise and fact-finding ability is necessary in order to resolve this case as it is based on the sufficiency of and compliance with an IEP. Moreover, because the Court finds that plaintiffs never attempted to request a hearing previously, and because the agency's revamped procedures allow for a more re-

sponsive complaint procedure, it is not futile for plaintiffs to exhaust their administrative remedies. Finally, because the statute requires that the agency respond at each level of procedure within a specific time frame, the Court is confident that plaintiffs' complaints shall be resolved in a timely and efficient manner. However, as the complaint shall be dismissed without prejudice, the Court shall remain open for plaintiffs to appeal an adverse agency decision.

### D. Conclusion

Having decided (1) that plaintiffs' claims under the EHA, the IDEA, the Rehabilitation Act and section 1983 require exhaustion of administrative remedies prior to judicial review, (2) that plaintiffs have not exhausted said remedies, and (3) that said exhaustion is not futile, a waste of resources, or would have a severe impact upon the parties, and therefore must be undertaken, the Court finds that this case is not properly before the Court at this time. Accordingly, the Court shall not address defendants' other grounds for summary judgment, but shall dismiss the entire complaint without prejudice.

**WHEREFORE,** The Court hereby dismisses plaintiffs' claims **without prejudice.** Judgment shall be entered accordingly.

IT IS SO ORDERED.