**Hector GONZALEZ, et al., Plaintiffs,**

v.

**PUERTO RICO DEPARTMENT OF EDUCATION, Defendant.**

**Civil No. 95–2284(HL).**

United States District Court, D. Puerto Rico.

June 11, 1997.

Orlin P. Goble, Hato Rey, PR, Robert F. Blackmore, Dunn, Carney, Allen, Higgins & Tongue, Portland, OR, for Plaintiffs.

Hjalmar Flax, Dept. of Justice, Federal Litigation Div., San Juan, PR, Leigh M. Manasevit, Washington, DC, Karen S. Lovitch, Brustein & Manasevit, Washington, DC, John P. Sherman, Brustein & Manasevit, Washington, DC, for Defendant.

## OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiffs brought this action pursuant to the Individuals with Disabilities Education Act ("the IDEA").[1] Plaintiffs are Hector Gonzalez, his wife Gricelle Nazario Gonzalez ("Nazario"), and their son Gabriel Gonzalez. Gabriel's parents bring this action on his behalf. Defendant is the Puerto Rico Department of Education ("the Department"). Plaintiffs seek reimbursement from the Department for their expenses in educating Gabriel at private schools. The Court held a four-day bench trial on Plaintiffs' claims, and it is now ready to rule.[2]

## FINDINGS OF FACT

The parties stipulated to the following facts:[3]

1. Gabriel was born on December 21, 1982. He has been diagnosed as having autism, mental retardation, cerebral dysfunction syndrome and elective mutism. He is a child with a disability, as defined by the IDEA. See 20 U.S.C.A. § 1401(a)(1).

2. Gabriel was initially placed in a private school in Puerto Rico. That school closed after the 1987–88 school year. His parents then placed him in the Carmen Gomez Tejera School, a public school, for the 1988–89 and 1989–90 school years.

3. Gabriel's parents withdrew him from the public school and placed him in a private school in Puerto Rico for the 1990–91 and 1991–92 school years. Starting in the 1992–93 school year, he has been placed in the Higashi School in Boston.

Based on all the evidence and testimony presented at trial, the Court makes the following findings of fact:

1. When Gabriel was two years old he began to have an excessive number of tantrums. His parents became concerned and took him to doctors. It was then that Gabriel was diagnosed as having autism.[4]

2. The tantrums continued and became worse during the time that Gabriel was placed in public schools in the 1988–89 and 1989–90 school years.[5] While Gabriel was placed in public schools, his mother Gricelle Nazario Gonzalez participated in the meetings to prepare Gabriel's individualized education program ("IEP"). She signed each IEP as a participant.[6] She also signed on April 19, 1989, a document entitled "Parents' Rights" which listed in Spanish the rights of

---

1. 20 U.S.C.A. §§ 1400—1491o (West 1990 & Supp.1997). The name of the Act was changed from the "Education of the Handicapped Act" to the "Individuals with Disabilities Education Act" in 1990. Education of the Handicapped Act Amendments of 1990, Pub.L. No. 101–476, § 901(a)(1), 104 Stat. 1103. The Education of the Handicapped Act and the IDEA are the same legislative act. Therefore, in the interest of brevity, the Court will refer only to "IDEA," even though some of the cases cited below interpreted the Act before its title was changed by the 1990 amendments.

2. In an order dated May 15, 1996, the Court stated that the hearing on Plaintiffs' request for injunctive relief would be a consolidated hearing for a preliminary and permanent injunction. See docket no. 27.

3. Docket no. 37, at 8–9.

4. Testimony of Gricelle Nazario Gonzalez.

5. Testimony of Gricelle Nazario Gonzalez.

6. Joint exhibits I & II.

parents of children with disabilities.[7] Nazario is a native Spanish speaker. During the IEP meetings Nazario told school officials of her concerns and complaints regarding Gabriel's education. She also met with Gabriel's teachers and principal. In these meetings she complained to them that Gabriel's behavior was not improving; rather, his tantrums were becoming prolonged and more intense. She also complained to the school officials that she often had to drive Gabriel to school herself because the public school was unable to provide the transportation that it was supposed to provide. Gabriel's parents were not satisfied with the education that Gabriel was receiving, and they withdrew him from the public schools after the 1989–90 school year.

3. The Higashi School is a private residential school. Its students live at the school's residential facilities. The school also has day students. It specializes in the education of autistic children with a system developed in Japan. The system attempts to provide the autistic child with structure, and from that structure the child's daily living and social skills are developed. The Higashi School emphasizes the use of physical education, art, music, and academics to achieve its goals.

4. Since he was placed at Higashi, Gabriel's behavior has improved. He is less aggressive, and his tantrums are much less common.

5. Dr. Dennis Russo, Plaintiffs' autism expert, evaluated Gabriel in 1994, 1995, and 1996. In making his evaluation he also reviewed a previous evaluation done by the University of Miami in 1991 and another evaluation done by Dr. Ann Roberts in 1996.[8]

6. In 1994, after Gabriel had been placed at the Higashi School, Plaintiffs sent two requests for a due process hearing to the Department. Plaintiffs requested a hearing on whether Gabriel's IEPs were adequate, whether the public schools followed IDEA's procedural safeguards, and whether Gabriel's placement at the Higashi School was appropriate. The first request was sent on August 31, 1994, and the second was sent on October 28, 1994.[9] The Department received, but did not respond to, the August 31, 1994, request.[10] After Plaintiffs sent their second request, the Department responded and appointed a hearing officer for their case.[11] A hearing was scheduled on January 19, 1995, but was continued until February 27 and 28, 1995, at the request of Plaintiffs' attorney.[12] On February 23, 1995, the Department moved for a continuance of the hearing; the motion was granted and the hearing was continued until April 4 and 5, 1995.[13] The hearing was subsequently rescheduled to April 25 to 28, 1995. By an order dated April 18, 1995, the hearing officer disqualified himself from the case without a reason.[14] On April 25, 1995, the new hearing officer vacated the hearing date but did not set a new date.[15] The officer did order the parties to

7. Exhibit K.

8. Exhibits 20 & 21.

9. Exhibits 1 & 2.

10. In its pretrial motions, the Department has argued that the second request should be considered in determining whether there was a timely response to Plaintiffs' request for a hearing. The Court, in an opinion and order ruling on the Department's motion to dismiss, stated that Plaintiffs requested a hearing in November 1994. *See* docket no. 26. Notwithstanding this statement in its opinion and order, for the following reasons the Court finds that the request was first made on August 31, 1994. First, at trial Gricelle Nazario testified that the Department did not respond to her August 31, 1994, request for a hearing. Second, the parties stipulated that the secretary of Plaintiffs' counsel would have testified that she mailed the two letters requesting a

due process hearing. At trial, the Department offered no evidence to show that the letters were not in fact mailed or that the first letter was never received. Moreover, Maria Morales of the Department testified that it was *both* of these letters that brought Gabriel's case to the Department's attention. Accordingly, the Court finds that the Department received the first letter and that Plaintiffs first requested a hearing on August 31, 1994.

11. Docket no. 12, exhibits E & F.

12. Docket no. 12, exhibits G, H, & P.

13. Docket no. 12, exhibits O & P.

14. Docket no. 12, exhibit R.

15. Docket no. 12, exhibit S.

submit legal briefs on the question of whether Plaintiffs' unilateral withdrawal of Gabriel from the public school system precluded them from seeking reimbursement for their subsequent educational expenses. No new hearing date was ever set for Plaintiffs. On October 18, 1995, they filed the present claim in this Court.

7. In response to this litigation, the Department developed a preliminary individualized educational program to educate Gabriel in Puerto Rico public schools.[16] Under this plan, the Department would assign a case manager to Gabriel. This case manager would coordinate the educational services provided to him, assist his parents in becoming involved in his program, and keep the Department informed of his progress. Gabriel would be placed in one of three schools. The students at each one of the schools are primarily non-disabled, but each school has facilities for disabled children. Under the proposed plan, Gabriel would spend part of his day in classes with non-disabled students. The plan was developed by Maria Morales, the Assistant Secretary for Special Education in the Puerto Rico Department of Education; Dr. Nicolas Linares, the Department's autism expert; and Nydia Bou, a speech pathologist and the proposed case manager for Gabriel. Gabriel's parents did not participate in the development of the plan.

Plaintiffs seek reimbursement for their educational expenses of Gabriel after the 1989–90 school year. They claim that the Department violated the IDEA by failing to provide Gabriel with an appropriate public education in the 1988–89 and 1989–90 school years. They also make two claims of violations of the IDEA's procedural safeguards. First, they allege that during the time that Gabriel was placed in Puerto Rico public schools the Department did not comply with its duty to advise Plaintiffs of their rights under IDEA. Second, they allege that the Department failed to provide them with a due process hearing in 1994. Plaintiffs also seek a de-

claratory judgment that Gabriel requires a residential placement in order to receive a free appropriate public education ("FAPE"); that his present placement at the Boston Higashi School is appropriate; and that the Department is liable for his future educational costs until the Department is able to provide him with a FAPE. As an alternative to this declaratory relief, Plaintiffs seek a declaration that in order to provide Gabriel with a FAPE, the Department must provide him with a heightened level of educational services, including an extended school day, an extended school year, speech therapy, family therapy, family education, and respite care. Plaintiffs also seek an award of attorney's fees.

The Department contests Plaintiffs' request for reimbursement of past educational expenses. The Department also contests the appropriateness of Gabriel's placement at the Higashi School. The Department agrees that Gabriel requires a heightened level of educational services, and it claims that it has an individualized educational program for Gabriel that will provide him with a FAPE. Plaintiffs dispute the appropriateness of the educational program proposed by the Department.

## APPLICABLE LAW

The IDEA provides state[17] and local educational agencies with federal funding for the education of handicapped and disabled children. The parties have stipulated that the Puerto Rico Department of Education receives federal funding.[18] In order to qualify for this finding, a state must have a policy to ensure that all disabled children have a right to a free appropriate public education. 20 U.S.C.A. § 1412(1); *Amann v. Stow School System*, 982 F.2d 644, 646 (1st Cir.1992). A FAPE consists of "special education and related services" that (1) have been provided at public expense and under public supervision and direction; (2) meet the standards of the state's educational agency; (3) include an

16. Exhibits A & Aa.

17. For purposes of the IDEA, Puerto Rico is considered a state. 20 U.S.C.A. § 1401(a)(6) (West Supp.1997).

18. Docket no. 37, at 8.

appropriate preschool, elementary, or secondary school education in the state; and (4) are provided in conformity with the individualized education program required under section 1414(a)(5) of the IDEA. 20 U.S.C.A. § 1401(a)(18). A FAPE must guarantee a reasonable probability that the child will receive educational benefits with support services provided at public expense. *Carter v. Florence County School Dist. Four*, 950 F.2d 156, 160 (4th Cir.1991), *aff'd* 510 U.S. 7, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993); *Bd. of Educ. of Community Consol. School District No. 21 v. Illinois State Bd. of Educ.*, 938 F.2d 712, 715 (7th Cir.1991); *G.D. v. Westmoreland School Dist.*, 930 F.2d 942, 948 (1st Cir.1991).

■ The IDEA requires that the FAPE "confer some educational benefit upon the handicapped child." *Bd. of Educ. of Hendrick Hudson Cent. School District v. Rowley*, 458 U.S. 176, 200, 102 S.Ct. 3034, 3048, 73 L.Ed.2d 690 (1982). While this educational benefit must be more than *de minimis*, it need not maximize the disabled child's potential, commensurate with the opportunities provided nonhandicapped children. *Lenn v. Portland School Comm.*, 998 F.2d 1083, 1086 (1st Cir.1993); *Doe, By and Through Doe v. Smith*, 879 F.2d 1340, 1341 (6th Cir.1989). A free appropriate public education does not have to be the absolutely best for a child; rather, it must provide the child with " 'a basic floor of opportunity' " through a program designed to provide the disabled child with an educational benefit. *Seattle School Dist., No. 1 v. B. S.*, 82 F.3d 1493, 1500 (9th Cir.1996) (quoting *Union School Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir.1994)); *Ash v. Lake Oswego School Dist., No. 7J*, 980 F.2d 585, 587 (9th Cir.1992); *Westmoreland*, 930 F.2d at 948 ("[A] FAPE is simply one which fulfills the minimum federal statutory requirements."). The state must, however, provide the child with personalized instruction and sufficient support services to allow the child to benefit educationally. *Rowley*, 458 U.S. at 201, 102 S.Ct. at 3048; *Drew P. v. Clarke County School Dist.*, 877 F.2d 927, 930 (11th Cir.1989).

■ The FAPE must be provided in conformity with an individualized education program ("IEP"). 20 U.S.C.A. § 1401(a)(18). The development and implementation of a child's IEP are the cornerstones of the IDEA. *Honig v. Doe*, 484 U.S. 305, 311, 108 S.Ct. 592, 597–98, 98 L.Ed.2d 686 (1988); *School Comm. of Burlington, Massachusetts v. Dep't of Educ.*, 471 U.S. 359, 368, 105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1985); *Tennessee Dep't of Mental Health v. Paul B.*, 88 F.3d 1466, 1471 (6th Cir.1996). An IEP is a document prepared for each disabled child that must include a statement of the child's present level of educational performance; a statement of annual goals for the child; a statement of the particular educational services to be provided for the child, and the extent to which the child will be able to participate in regular educational programs; a statement of the necessary transition services for the child; and objective criteria for measuring the child's progress. 20 U.S.C.A. § 1401(a)(20); *Amann*, 982 F.2d at 646–47. The IEP is developed in a meeting between a representative of the local educational agency, the child's parents, his teachers, and, when appropriate, the child himself. 20 U.S.C.A. § 1401(a)(20). The IEP is a comprehensive statement of the disabled child's educational needs and of the specially designed instruction and services which will be used to meet those needs. *Burlington*, 471 U.S. at 368, 105 S.Ct. at 2002; *Pihl v. Massachusetts Dept. of Educ.*, 9 F.3d 184, 186 n. 4 (1st Cir.1993). The IEP does not have to be the choice of selected experts, the parents' first choice, or even the best choice, but it must provide the child with a free appropriate public education. *Amann*, 982 F.2d at 651 (quoting *Westmoreland*, 930 F.2d at 948).

The IDEA contains procedural safeguards that state educational agencies must follow. *See* 20 U.S.C.A. § 1415. The child's parents must be allowed to participate in the development of their child's IEP. 34 C.F.R. §§ 300.344—300.345 (1996); *Amann*, 982 F.2d at 647; *Hampton School Dist. v. Dobrowolski*, 976 F.2d 48, 54 (1st Cir.1992). The IEP must be established or revised at the beginning of each school year. 20 U.S.C.A. § 1414(a)(5). Additionally, the parents are entitled to have an opportunity to inspect relevant records; to obtain an independent

educational evaluation of their child; and to present complaints regarding the educational placement of their child. *Id.* § 1415(b)(1). Parents are entitled to have their complaints resolved at an impartial due process hearing. *Id.* § 1415(b)(2). The decision rendered in the due process hearing may be appealed to the state's educational agency which must conduct an impartial review of the hearing. *Id.* § 1415(c). These administrative proceedings may, in turn, be appealed in federal or state court. *Id.* § 1415(e)(2).[19] A court's inquiry in an IDEA case is two-fold. First, the court must consider whether the state has complied with IDEA's procedural safeguards; second, the court must consider whether the child's IEP is reasonably calculated to provide the child with educational benefits. *Rowley,* 458 U.S. at 206–07, 102 S.Ct. at 3051; *Livingston v. DeSoto County School District,* 782 F.Supp. 1173, 1177 (N.D.Miss.1992).

Plaintiffs base their requests for reimbursement on a number of grounds. They claim that the Department violated the IDEA by failing to provide Gabriel with an appropriate public education in the 1988–89 and 1989–90 school years. They further claim that during the time that Gabriel was placed in Puerto Rico public schools the Department did not comply with its duty to advise Plaintiffs of their rights under IDEA. They also claim that the Department failed to provide them with a due process hearing in 1994. The Court addresses each one of these claims in turn.

*1. Plaintiffs' claim for reimbursement for costs incurred after the 1989–90 school year*

*a. The claim for violations of the procedural safeguards in the 1988–89 and 1989–90 school years*

■ Plaintiffs unilaterally withdrew Gabriel from Puerto Rico public schools after the 1989–90 school year and placed him in private schools. They claim that they are entitled to be reimbursed for the expenses they have incurred to pay for Gabriel's education since then. Parents who unilaterally place their child in private schools without the consent of state school officials do so "at their own financial risk." *Burlington,* 471 U.S. at 373–74, 105 S.Ct. at 2004; *Independent School Dist. No. 283 v. S.D. by J.D.,* 88 F.3d 556, 561 (8th Cir.1996); *Komninos v. Upper Saddle River Bd. of Educ.,* 13 F.3d 775, 780 (3rd Cir.1994). The parents will be entitled to reimbursement only if a court concludes both that the child's placement in the public school violated the IDEA and that the placement of the child in the private school was proper under the IDEA. *Florence County School District Four v. Carter,* 510 U.S. 7, 15, 114 S.Ct. 361, 366, 126 L.Ed.2d 284 (1993). Plaintiffs claim that the Department violated the IDEA both by failing to provide Gabriel with an appropriate public education in the 1988–89 and 1989–90 school years and by failing to comply with the IDEA's procedural safeguards. The Court will first consider Plaintiffs' allegations that the Department violated the procedural safeguards.

The importance of these procedural safeguards "cannot be gainsaid." *Rowley,* 458 U.S. at 205, 102 S.Ct. at 3050; *Evans v. District No. 17,* 841 F.2d 824, 828 (8th Cir. 1988). Congress placed as much emphasis upon complying with the procedural rights under the IDEA as it did upon the substantive requirements of developing an IEP. *Rowley,* 458 U.S. at 205–06, 102 S.Ct. at 3050; *Evans,* 841 F.2d at 828. These safeguards are meant to insure that a child's parents have a large measure of input into the administrative process. *Rowley,* 458 U.S. at 205–06, 102 S.Ct. at 3050; *Livingston,* 782 F.Supp. at 1178. The failure to comply with these safeguards may be sufficient grounds to hold that the school has failed to provide a FAPE. *Jackson v. Frank-*

---

**19.** Normally, a party must exhaust its administrative remedies before bringing an action under the IDEA in federal court. *Maldonado v. Benitez,* 874 F.Supp. 491, 496–97 (D.P.R.1995). In the present case, although Plaintiffs did request a due process hearing, one was never held. In an order entered May 15, 1996, the Court held that exhaustion of the administrative remedies was not necessary because exhaustion would unnecessarily delay the proceedings, would be futile, and would subject Plaintiffs to severe harm. *See Pihl,* 9 F.3d at 190–91; *Ezratty v. Commonwealth of Puerto Rico,* 648 F.2d 770, 774–75 (1st Cir. 1981); *Maldonado,* 874 F.Supp. at 498.

*lin County School Bd.*, 806 F.2d 623, 629 (5th Cir.1986); *Hall by Hall v. Vance County Bd. of Educ.*, 774 F.2d 629, 635 (4th Cir.1985); *Briere v. Fair Haven Grade School Dist.*, 948 F.Supp. 1242, 1255 (D.Vt.1996).

■ The fact that a school may have committed a procedural error, however, does not automatically render an IEP legally defective and therefore does not automatically constitute a violation of the IDEA. *Amann*, 982 F.2d at 652; *Livingston*, 782 F.Supp. at 1178–79. A procedural infraction will constitute sufficient grounds for holding that the school violated the IDEA when there is " 'some rational basis to believe that procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of educational benefits.' " *Amann*, 982 F.2d at 652 (quoting *Roland M. v. Concord School Comm.*, 910 F.2d 983, 994 (1st Cir.1990)). For a procedural error to constitute a violation of the IDEA, the error must have caused a negative impact on whether the child's IEP adequately provided him with an appropriate public education. *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625 (6th Cir.1990) (Technical noncompliance with the procedural safeguards was harmless when the child's parent was notified of a dispute and participated in the IEP conference); *Doe v. Alabama State Dep't of Educ.*, 915 F.2d 651, 662 (11th Cir.1990); *Roland M.*, 910 F.2d at 994; *Frith v. Galeton Area School Dist.*, 900 F.Supp. 706, 713 (M.D.Pa.1995); *Gerstmyer v. Howard County Public Schools*, 850 F.Supp. 361, 364–65 (D.Md.1994); *Hiller v. Bd. of Educ. of Brunswick*, 743 F.Supp. 958, 970 (N.D.N.Y. 1990). In the case of procedural errors causing such a negative impact, reimbursement would be an appropriate remedy. *Evans*, 841 F.2d at 828; *McKenzie v. Smith*, 771 F.2d 1527, 1535–36 (D.C.Cir.1985).

■ In the case before the Court, Gabriel's parents claim that the Department never advised them of their IDEA rights—including the rights to seek publicly funded residential placement, to obtain an indepen-

dent educational evaluation, to resolve disputes at a due process hearing, and to seek appellate review in court. The IDEA requires the school or educational agency to notify the parents of all their procedural rights under the act whenever the agency proposes to change, or refuses to change, a child's educational placement or FAPE. 20 U.S.C.A. § 1415(b)(1)(C) & (D). The notice must be written in the parents' native tongue in language understandable to the general public. 34 C.F.R. § 300.505(b). At trial, the Department submitted a document dated April 19, 1989, and entitled "Parents' Rights." [20] The document lists, in Spanish, the educational rights of parents of children with disabilities. The list includes the rights to participate in the preparation of the child's IEP; to approve or reject the IEP; to approve or reject the educational placement of the child; to place the child in a private school, at the Department's expense, if the public schools are unable to provide an appropriate education; to attend educational meetings with the representation of the parent's choice; to request an independent evaluation of the child; to receive explanations of the evaluations; to file complaints with the superintendent of schools; to attend and participate in hearings; to obtain information from the Department on where the parent might obtain free or inexpensive legal help; and to file a complaint in court when the parent believes the child's rights have been violated or the established procedures have not been followed. This list of rights dated April 19, 1989, is signed by Gricelle Nazario, Gabriel's mother. At trial she testified that she did not remember seeing the document, but she acknowledged that her signature did appear on it. It may be that she does not remember the contents of the document that she signed in 1989. The Court finds, however, that the Department did comply with its duty to provide Gabriel's parents with written notice of their rights under IDEA.

Nazario further testified that while Gabriel was attending public schools she participated in the meetings to prepare his IEP. At these meetings she expressed her concerns and complaints to the school officials. Her signa-

---

**20.** Exhibit K.

ture appears in each IEP as a participant.[21] During the school year she also met with Gabriel's teachers and principal. In these meetings she voiced her concerns that Gabriel's behavior was not improving; rather, his tantrums were becoming prolonged and more intense. Additionally, she complained to the school officials that she often had to drive Gabriel to school herself because the public school was unable to provide the transportation that it was supposed to provide. Throughout Gabriel's two years in Puerto Rico public schools, it appears that his parents participated in the development of his education. They were not satisfied with the education that Gabriel was receiving. Nonetheless, they did have input into the administrative process. *See Rowley,* 458 U.S. at 205–06, 102 S.Ct. at 3050; *Livingston,* 782 F.Supp. at 1178. Because they had this input and because the Department provided Gabriel's parents with notice of their rights under IDEA, the Court finds that the Department did not violate the IDEA's procedural safeguards during the 1988–89 and 1989–90 school years.

### b. The claim for failure to provide a FAPE in 1988–89 and 1989–90

■ Plaintiffs also claim that the Department violated the IDEA by failing to provide Gabriel with an appropriate public education in the 1988–89 and 1989–90 school years. As the party challenging the appropriateness of Gabriel's placement, Plaintiffs bear the burden of proving the inadequacy of his IEP. *See Amann,* 982 F.2d at 650; *Christopher M. v. Corpus Christi Indep. School Dist.,* 933 F.2d 1285, 1290–91 (5th Cir.1991); *Doe v. Brookline School Comm.,* 722 F.2d 910, 919 (1st Cir.1983). There is a presumption in favor of the educational placement established in the child's IEP. *Christopher M.,* 933 F.2d at 1290–91. The IEP must provide the child with a FAPE. *Amann,* 982 F.2d at 651. A FAPE must guarantee a reasonable probability that the child will receive educational benefits with support services provided at public expense. *Westmoreland,* 930 F.2d at 948.

■ In the case before the Court, Plaintiffs did not present sufficient evidence to establish that Gabriel was not receiving a FAPE in the 1988–89 and 1989–90 school years. Their expert on autism, Dr. Dennis Russo, did testify that Gabriel needed residential placement in the 1989–90 school year. Dr. Russo subsequently contradicted his own testimony, however, when he stated that he did not look at Gabriel's placement in 1988, that he knew about Gabriel's behavior only as of 1992, and that he could make no statement about Gabriel's placement before 1992. Furthermore, Dr. Russo testified that he did not evaluate Gabriel until 1994 and that the reports on Gabriel that he consulted in making his evaluation were done in 1991 and 1996.[22] Dr. Russo's testimony on whether Gabriel needed residential placement between 1988 and 1990 was equivocal. This equivocation lessens the weight of his testimony that Gabriel needed residential placement in the 1989–90 school year. The weight of his testimony is further lessened by the fact that he neither examined Gabriel during the 1988–89 and 1989–90 school years nor did he consult studies of Gabriel from this time period. Moreover, Dr. Russo did not testify that he consulted Gabriel's IEPs from this time. Therefore, his testimony is insufficient to establish that Gabriel was not receiving educational benefits during these two school years.

The Department's own autism expert, Jr. Nicolas Linares, did testify that Gabriel's placement in the Higashi school was the right choice at the time because he needed that kind of structure. However, Gabriel was first placed in Higashi during the 1992–93 school year, two years after Gabriel's parents removed him from public schools. Dr. Linares did not offer any opinion as to whether Gabriel's educational placement in the 1988–89 and 1989–90 school years was appropriate.

Gricelle Nazario testified that she was not satisfied with the education that Gabriel was receiving in the Puerto Rico public schools between 1988 and 1990 and that his behavior

**21.** Joint exhibits I & II.

**22.** Exhibits 20 & 21.

got worse during the time that he was placed in public schools. The fact that Gabriel's parents were dissatisfied with his educational placement is, by itself, insufficient to establish that Gabriel was not receiving a FAPE. An educational placement that is not the parents' first choice may still provide the child with a FAPE. *Amann,* 982 F.2d at 651; *Lachman v. Illinois State Bd. of Educ.,* 852 F.2d 290, 297 (7th Cir.1988) (Parents do not have the right to compel a school district to provide their disabled child with a specific program or methodology). Nor is the child necessarily entitled to the best possible education available. *Seattle School Dist.,* 82 F.3d at 1500; *Amann,* 982 F.2d at 651; *Ash,* 980 F.2d at 587; *Sherri A.D. v. Kirby,* 975 F.2d 193, 206–07 (5th Cir.1992). It is irrelevant that the parents' preferred placement for their child may provide a better education; the relevant inquiry is whether the school's program will provide the child with educational benefits. *Bertolucci v. San Carlos Elementary School Dist.,* 721 F.Supp. 1150, 1156 (N.D.Cal.1989); *Manuel R. v. Ambach,* 635 F.Supp. 791, 794 (E.D.N.Y. 1986).

■ In the present case, it is uncontested that Gabriel's behavior worsened during the time that he was placed in Puerto Rico public schools. Plaintiffs have failed to show, however, that this worsening behavior demonstrates that Gabriel was not receiving a free appropriate public education at the time. There are a variety of factors that could have caused Gabriel's behavior to worsen between 1988 and 1990. Some of these factors may be education-based, but other factors certainly were not. The full scope of variables which could have affected Gabriel's behavior were not discussed at trial. Based on the evidence before it, the Court is unable to conclude that Gabriel's worsening behavior is conclusive evidence that he was not receiving a FAPE at the time. Moreover, the state educational agency is responsible for providing each child with a FAPE; the educational agency is not necessarily responsible for providing the family with treatment for a child's behavior in the home. *See Paul B.,* 88 F.3d at 1474 (The purpose of IDEA is not to

provide free residential psychiatric treatment but to provide for special educational needs); *Tice v. Botetourt County School Bd.,* 908 F.2d 1200, 1208–09 (4th Cir.1990); *Swift v. Rapides Parish Pub. School Sys.,* 812 F.Supp. 666, 673 (W.D.La.1993) (It is not the legal responsibility of the public school to remedy problems with the child's behavior in the home). Based on all of the above, therefore, the Court holds that Plaintiffs have failed to meet their burden of showing that Gabriel's placement in the Puerto Rico public schools during the 1988–89 and 1989–90 school years was not reasonably probable to provide him with educational benefits. *See Westmoreland,* 930 F.2d at 948.

Plaintiffs seek reimbursement for their educational expenses for Gabriel after the 1989–90 school year. Their unilateral withdrawal of Gabriel and placement of him in private schools was done "at their own financial risk." *See Burlington,* 471 U.S. at 373–74, 105 S.Ct. at 2004; *Independent School District,* 88 F.3d at 561; *Komninos,* 13 F.3d at 780. They would be entitled to reimbursement only if the Court could conclude both that Gabriel's placement in the Puerto Rico public schools violated the IDEA and that his placement in the private school was proper under the IDEA. *See Carter,* 510 U.S. at 15, 114 S.Ct. at 366. The Puerto Rico Department of Education violated the IDEA if either it failed to comply with IDEA's procedural safeguards or if Gabriel's IEP was not reasonably calculated to provide him with educational benefits. *See Rowley,* 458 U.S. at 206–07, 102 S.Ct. at 3051. As discussed above, the Court holds that, for the 1988–89 and 1989–90 school years, the Department did not violate IDEA's procedural safeguards, and Plaintiffs failed to show that Gabriel's IEP for these years was not reasonably calculated to provide him with educational benefits. Because the Court does not conclude that the Department violated the IDEA for the 1988–89 and 1989–90 school years, Plaintiffs are not entitled to reimbursement for their educational expenses for the 1990–91, 1992–93, and 1993–94 school years.[23] Plaintiffs claim an additional

**23.** The Department argues that part of the claim

for reimbursement for the years 1990–1994 is

violation by the Department of the procedural safeguards in 1994. The Court's analysis of that claim follows.

### 2. Plaintiff's claim for violations of the procedural safeguards in 1994

■ Plaintiffs base their request for reimbursement for Gabriel's educational expenses on an additional claim: that the Department violated IDEA's procedural safeguards when it failed to provide them with a due process hearing in 1994. As discussed above, the failure to comply with these safeguards may be sufficient grounds to hold that the school has failed to provide a FAPE. *Jackson*, 806 F.2d at 629; *Hall*, 774 F.2d at 635; *Briere*, 948 F.Supp. at 1255. A procedural infraction constitutes a violation of the IDEA when there is " 'some rational basis to believe that procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of educational benefits.' " *Amann*, 982 F.2d at 652 (quoting *Roland M.*, 910 F.2d at 994). In the case of procedural errors causing such a negative impact, reimbursement would be an appropriate remedy. *Evans*, 841 F.2d at 828; *McKenzie*, 771 F.2d at 1535–36.

■ Under the IDEA, the parents of a disabled child are entitled to an impartial due process hearing to address their complaints regarding their child's placement. 20 U.S.C.A. § 1415(b)(2). The educational agency must ensure that the hearing is held and a final decision is reached within 45 days of the receipt of the parents' request for a hearing. 34 C.F.R. § 300.512(a). The agency's failure to promptly hold a hearing may warrant awarding reimbursement to the parents. *Rapid City School Dist. 51–4 v. Vahle*, 733 F.Supp. 1364, 1370 (D.S.D.1990), *aff'd*, 922 F.2d 476 (8th Cir.1990); *Ahern v. Keene*, 593 F.Supp. 902, 910 (D.Del.1984).

In the case before the Court, Plaintiffs sent a request for a due process hearing to the Department on August 31, 1994. The Department did not immediately respond to this request. It was only after Plaintiffs sent a second request to the Department on October 28, 1994, that it began to respond. By November 14, 1994, a hearing officer had been appointed.[24] As detailed above, the officer did schedule a due process hearing. The hearing date, however, was continued on a number of occasions. The last change in the hearing date took place on April 25, 1995, when the hearing date was vacated. Thereafter, a new hearing date was never set. Thus, when Plaintiffs filed this complaint on October 18, 1995, more than one year after they first requested a hearing, no hearing date was scheduled.

■ The Department failed to comply with the requirement that a hearing be held and a decision be rendered within 45 days of the request for a hearing. It is true that one of the continuances of the hearing date came at the request of Plaintiffs themselves. The hearing was originally scheduled for January 19, 1995, but pursuant to a motion by Plaintiffs, the hearing officer rescheduled it to February 27, 1995. This is a delay of 39 days. However, even if the Court discounts this delay, the Department still failed to meet the 45–day deadline for rendering a decision, as required by the IDEA. It is true that this procedural error by the Department will not automatically constitute a violation of the IDEA. *See Amann*, 982 F.2d at 652; *Livingston*, 782 F.Supp. at 1178–79. The Department's failure to hold a hearing and render a decision will constitute a violation of the IDEA if there is a rational basis to believe that these failures compromised Gabriel's right to a FAPE, seriously hampered his parents' opportunity to participate in the process, or caused Gabriel a deprivation of educational benefits. *See Amann*, 982 F.2d at 652. The Court finds that the harm to

time-barred. The IDEA does not contain a time limit for the filing of a cause of action. In order to determine whether a claim is timely, a court must look to the most analogous statutes of limitations provision from the pertinent state. *Providence School Dep't. v. Ana C.*, 108 F.3d 1, 2–3 (1st Cir.1997). However, because the Court has ruled that Plaintiffs are not entitled to reimburse-

ment for their expenses between 1990 and 1994, it is unnecessary to make a determination on which Puerto Rico statutes of limitations would be applicable to an IDEA claim.

**24.** Docket no. 12, exhibit F.

Plaintiffs as a result of the Department's failure to hold a due process hearing is clear. The Plaintiffs were deprived of their right to request reimbursement. The lack of a hearing and a decision constituted a denial of their request without any consideration being given to the merits of their claim. If the Department had complied with IDEA's regulations, a decision would have been timely rendered. If the decision had been favorable, Plaintiffs would have been entitled to reimbursement. If it had been unfavorable, Plaintiffs would have been entitled to appeal the decision. The Department's delays foreclosed Plaintiffs from either of these options. The seriousness of the Department's procedural violation is compounded by the fact that during the time that Plaintiffs were seeking a hearing they were forced to pay Gabriel's educational expenses. Gabriel's right to a free appropriate public education was compromised, and his parents' opportunity to .participate in the development of their son's education was seriously limited. Therefore, the Court finds that the Department's failure to hold a due process hearing and render a decision on Plaintiffs' request for reimbursement constitutes a violation of the IDEA.

 In order for Plaintiffs to be entitled to reimbursement, the Court must also conclude that Gabriel's placement at the Higashi School was proper under the IDEA. *See Carter*, 510 U.S. at 15, 114 S.Ct. at 366. The placement may be proper even though the private school does not meet state education standards. *Id.* at 14, 114 S.Ct. at 365. The standard for judging whether a private school placement is proper is the same standard by which a public school placement is judged—whether the education provided by the school is reasonably calculated to allow the child to receive educational benefit. *Carter*, 950 F.2d at 163. The education must be more than *de minimis*, but it need not maximize the child's potential. *Lenn*, 998 F.2d at 1086; *Doe*, 879 F.2d at 1341.

In the case before the Court, there is ample evidence demonstrating that the Higashi School meets this standard. Plaintiffs' autism expert Dr. Russo testified that Gabriel's aggressive conduct was well controlled

at Higashi. Ketsudo Okudo, a master teacher at the school, also testified that Gabriel's aggressiveness was under control. The Department did not contest this assertion. The Department does argue that the Higashi School is not the least restrictive environment for Gabriel. The IDEA contains a statutory preference to have children educated in the least restrictive environment, but it does allow for residential placement if it is necessary to meet the child's educational needs. *Paul B.*, 88 F.3d at 1471; *McKenzie*, 771 F.2d at 1534. Both Dr. Russo and Robert Fantasia—an autism expert and the principal at Higashi—testified that Gabriel needed to be residentially placed in a school in order to receive an appropriate education. Dr. Russo also opined that because of Higashi's trained staff, its twenty-four hour treatment, and the behavioral improvement the school has brought about in Gabriel, the school constituted an appropriate placement for him. Dr. Linares, the Department's autism expert, acknowledged that Higashi's approach is successful and that Gabriel has benefited from it. Maria Morales, the Assistant Secretary for Special Education, also acknowledged that Higashi was an appropriate placement for Gabriel. Based on the above-cited testimony and based on Gabriel's improvement since he has been at the school, the Court finds that the Higashi School provides Gabriel with an education reasonably calculated to allow him to receive educational benefit. Accordingly, his placement at the school is appropriate.

Plaintiffs have shown both that the Department's failure to hold a due process hearing constituted a violation of the IDEA and that Gabriel's placement at the Higashi School is appropriate under the IDEA. Accordingly, they are entitled to reimbursement of their educational expenses. *See Carter*, 510 U.S. at 15, 114 S.Ct. at 366. The Court must determine the date from which Plaintiffs' expenses are reimbursable. Plaintiffs requested a due process hearing on August 31, 1994. Under IDEA's regulations which require a decision within 45 days of the hearing request, a decision was due by October 15, 1994. As noted above, however, a 39–day delay was done at Plaintiffs' requests. Thus, a decision rendered on No-

vember 23, 1994, would have complied with IDEA's time limits. No hearing was held and no decision was rendered by that date. The Court finds that Plaintiffs are entitled to reimbursement of their educational expenses as of November 23, 1994.

### 3. The Department's preliminary IEP

At trial, the Department presented a preliminary IEP for the education of Gabriel in Puerto Rico public schools. As part of this plan, the Department would designate a case manager who would oversee Gabriel's education. He would be placed in one of three schools, and spend part of his day with non-disabled students. The IEP, however, is not complete. In his testimony, Dr. Linares emphasized that the Department's IEP was preliminary in nature. He believed that before the IEP could be completed it was necessary to give Gabriel a full developmental evaluation, including a speech language assessment and a psychological evaluation. Maria Morales, who participated in the development of the preliminary IEP also acknowledged that the IEP was not complete; that in order to complete it the Department required additional information such as Gabriel's IEP from Higashi and his current reading level scores; and that further evaluations and his parents' input were also necessary to complete the IEP. It is uncontested that Gabriel's parents did not participate in the development of the Department's preliminary IEP. The parents must participate in the preparation of an IEP. 20 U.S.C.A. § 1401(a)(20); Amann, 982 F.2d at 647.

The Department would have the Court rule on the appropriateness of an admittedly incomplete IEP. Such a task gives the Court pause for the following reasons. First, the Department itself may decide, after making the additional evaluations of Gabriel which it says are necessary, that the preliminary IEP requires substantial changes. In that case, ruling on its adequacy now would be an unnecessary exercise. Second, every IEP contains educational plans for the future, and is therefore subject to a degree of speculation and guesswork. The fact that the Department's preliminary IEP is incomplete heightens this speculation to a level

that weighs against judging the IEP now. Lastly, "[j]urists are not trained, practicing educators." Roland M., 910 F.2d at 989. For the Court to decide what may or may not be missing from this preliminary IEP would thrust the Court into the role of a practicing educator. Courts should be hesitant to impose their views of what constitutes proper educational practice. Rowley, 458 U.S. at 208, 102 S.Ct. at 3051; Mrs. B. v. Milford Bd. of Educ., 103 F.3d 1114, 1120 (2nd Cir.1997); Independent School Dist., 88 F.3d at 561; Seattle School Dist., 82 F.3d at 1499; Lenn, 998 F.2d at 1086. Accordingly, the Court will refrain from ruling on the appropriateness of the Department's preliminary and incomplete IEP.

Rather than have the Court assess an incomplete IEP, the proper course in resolving this dispute is to allow the Department a full opportunity to complete its IEP for Gabriel. Accordingly, the Court grants the Department sixty days to complete the necessary evaluations of Gabriel and to prepare a final IEP. Originally, Gabriel's parents refused to participate in the development of this IEP. The Court now orders Plaintiffs to cooperate fully with the Department in its preparation of the IEP. Full cooperation includes attending IEP meetings with the Department, making Gabriel available for evaluations, providing the Department with any necessary records, and making a good faith effort to develop a mutually acceptable IEP.

The Court shall continue to retain jurisdiction over this matter. Upon the completion of the IEP, one of three scenarios will present itself: one, the Department will agree that Gabriel's placement at Higashi is appropriate and it will agree to continue to pay Plaintiffs' educational expenses; two, following the good faith negotiations ordered above, the Department will develop an alternative to Higashi which is satisfactory to Plaintiffs; or three, Plaintiffs and the Department will continue to disagree on what constitutes an appropriate education for Gabriel. In the event of either of the first two scenarios, the Court's involvement in this matter will of course no longer be necessary and a final judgment will be entered. In the event of the third scenario that the parties

are unable to agree on an appropriate placement for Gabriel, the parties are ordered to exhaust the administrative remedies available under the IDEA. In such a case, the Court orders the Department to hold an impartial due process hearing and render a decision within 45 days of the request of the hearing, as required by the IDEA. Once the administrative remedies provided by the IDEA have been exhausted, a party may move this Court to review the administrative decision. The Court's review will not be *de novo;* rather, the Court shall accord the administrative proceedings due weight and make an involved oversight of the findings. *See Lenn,* 998 F.2d at 1086–87.

The Court acknowledges that requiring an exhaustion of the administrative remedies may prolong the resolution of this controversy. However, Plaintiffs themselves have requested that the Court adopt this strategy in order to resolve this case.[25] The Court finds that requiring this administrative step is the most prudent means of bringing about a final and equitable resolution of the case. The officer at the due process hearing will have the completed IEP before him or her. The administrative appeal process will—in the event that a party chooses to have this Court review the administrative decision—provide the Court with a full administrative record which should facilitate bringing this case to a close. *Cf. Urban by Urban v. Jefferson County School Dist. R–1,* 870 F.Supp. 1558, 1566–1570 (D.Colo.1994) (Remand of case to school authorities to allow them to meet with the student's parents and to consider what available services could be offered), *aff'd,* 89 F.3d 720 (10th Cir.1996). An administrative record will further facilitate the Court's task in determining what constitutes an appropriate education for Gabriel. Lastly, the IDEA requires this administrative review when there is a dispute over a proposed change in the child's IEP. *See* 20 U.S.C.A. § 1415(b) & (c).

Plaintiffs argue that pending the resolution of the dispute over what constitutes an appropriate education for Gabriel, he should be covered by the stay-put provision of the IDEA and be allowed to stay at Higashi.

The stay-put provision of the IDEA reads in pertinent part as follows: "[D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child. . . ." 20 U.S.C.A. § 1415(e)(3)(A). This provision is intended to protect disabled children and their parents during the review process. *Susquenita School Dist. v. Raelee S.,* 96 F.3d 78, 82 (3rd Cir.1996). It is based on the rationale that it is in the child's best interests to maintain the status quo during the review process. *Paul B.,* 88 F.3d at 1472. Thus, when a disabled child's educational placement is at issue, he shall remain in his current educational placement until the dispute is resolved. *Drinker by Drinker v. Colonial School Dist.,* 78 F.3d 859, 865–67 (3rd Cir.1996). Moreover, the school system may be financially responsible for the cost of a child's current appropriate placement during the pendency of the review process. *Susquenita,* 96 F.3d at 81–87; *Bd. of Educ. of Montgomery County v. Brett Y,* 959 F.Supp. 705, 709–14 (D.Md. 1997). In the present case, the Court has already found that Gabriel's current educational placement at Higashi is appropriate. The Court has also found that the Department's failure to hold a due process hearing constituted a violation of the IDEA and that Plaintiffs are entitled to reimbursement of their educational expenses. In order to preserve the status quo until this dispute is ultimately resolved, the Court holds that the stay-put provision applies to Gabriel. Therefore, pending the Department's completion of its IEP and any administrative review of the IEP, he shall remain at the Higashi School. Additionally, the Department shall pay the costs of his education there.

**4. *Plaintiffs' request for attorney's fees***

 Lastly, Plaintiffs request the payment of their attorney's fees. The IDEA grants the court discretion to award reasonable attorneys' fees to the child's parents when they are the prevailing party. 20 U.S.C.A. § 1415(e)(4)(B). A prevailing party

---

**25.** Docket no. 39, at 2; docket no. 47, at 14.

is one who has succeeded on a significant issue in the litigation and has achieved some of the benefit sought by bringing the suit. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Parents of Student W. v. Puyallup School Dist., No. 3,* 31 F.3d 1489, 1498 (9th Cir.1994). A prevailing party has obtained "at least some relief on the merits of his claim." *Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992); *Jodlowski v. Valley View Community Unit School Dist. # 365–U,* 109 F.3d 1250, 1253 (7th Cir.1997). In the present case, Plaintiffs sought reimbursement of their educational expenses incurred from the 1990–91 academic year to the present. The Court has granted them relief, but only as of November 23, 1994. They have, therefore, received some relief for a significant issue in this litigation. Accordingly, they are entitled to attorney's fees. Plaintiffs shall file an itemized claim for their attorney's fees within 30 days.

The Court finds one final note to be appropriate. The Court's ruling today does not draw this case to a close. It is entirely possible that substantially more litigation and time pass before this case is finalized. Disputes over educational placement can take years to "wind their way through the administrative/judicial labyrinth." *Roland M.,* 910 F.2d at 1000. The parties have a right to proceed along this labyrinth. It is the Court's hope, however, that the parties instead make a good faith effort to set aside their differences and work together to agree upon a mutually acceptable placement that will meet Gabriel's needs under the law.

WHEREFORE, based on the above, the Court makes the following rulings:

(1) The Department shall reimburse the educational expenses incurred by Plaintiffs from November 23, 1994, to the present. Plaintiffs shall submit to the Court by **July 14, 1997,** an itemization of these expenses, for the Court's approval.

(2) The Department shall have until **August 15, 1997,** to conduct additional evaluations and prepare a completed IEP for Gabriel. The Court hereby orders Plaintiffs to cooperate fully in the development of this IEP. Full cooperation includes attending IEP meetings with the Department, making Gabriel available for evaluations, and providing the Department with any necessary records. Failure to cooperate with the Department shall result in the imposition of sanctions.

(3) The Department shall submit the completed IEP to Plaintiffs by August 15, 1997. In the event that Plaintiffs do not accept the IEP, they shall so notify the Department via certified mail of their rejection and shall request an impartial due process hearing. Plaintiffs shall submit this rejection and request within 10 days of receipt of the IEP, no later than August 29, 1997. The Department shall promptly hold a due process hearing and render a decision within 45 days of its receipt of Plaintiffs' notice of rejection.

(4) During the development of the IEP and-if requested—the pendency of administrative review, Gabriel's educational placement shall continue to be at the Higashi School. The Department shall continue to be responsible for the cost of his education there.

(5) Plaintiffs shall submit by **July 14, 1997,** an itemized claim for their attorney's fees, for the Court's approval.

**IT IS SO ORDERED.**